UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL PRICE, 24 ALBANY HOLDING LLC,
YOUTH EMPOWERMENT SERVICES OF
NEW YORK INC., and DAVID L. SLATTERY,

                  Plaintiffs,

   -v-                                       1:12-CV-815

CITY OF TROY, NEW YORK, LOU ROSAMILIA,
in his individual and official capacity as Mayor of
City of Troy, WILLIAM CHAMBERLAIN, in his
individual and official capacity as City of Troy
Deputy Mayor, DON ALBANO, In his individual
and official capacity as City of Troy Code
Enforcement Employee, MATT MCGRATH, In his
individual and official capacity as City of Troy Code
Enforcement Employee, JOHN DOES #1, in their
respective individual & official capacities with
fictitious names intended to represent City of Troy
Code Enforcement Officers involved in the incidents
that violated plaintiff's federal and other rights, but
whose real names are not known, ISAAC BERTOS,
in his individual and official capacity as City of Troy
Police Officer, CHRISTOPHER JOHNSON, in his
individual capacity as City of Troy Police Officer,
BILL WADE, in his individual and official capacity
as City of Troy Police Officer, RANDALL FRENCH,
In his individual and official capacity as City of Troy
Police Officer, JOHN TEDESCO, in his individual and
official capacity as City of Troy Police Chief, and
JOHN DOES #2, in their respective individual & official
capacities with fictitious names intended to represent
City of Troy Police Officers involved in the incidents
that violated plaintiff's federal and other rights, but
whose real names are not known,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                          OF COUNSEL:

MICHAEL PRICE
Plaintiff, Pro Se
24 Albany Street
Albany, NY 12204

24 ALBANY HOLDING LLC
Plaintiff, Pro Se
275 Fourth Street
Troy, NY 12180

YOUTH EMPOWERMENT SERVICES
   OF NEW YORK INC.
Plaintiff, Pro Se
275 Fourth Street
Troy, NY 12180

OFFICE OF VINCENT U. UBA                              VINCENT U. UBA, ESQ.
Attorneys for Plaintiff David L. Slattery
750 Broadway
Albany, NY 12207

PATTISON, SAMPSON LAW FIRM                            DONALD J. SHANLEY, ESQ.
Attorneys for Defendants
22 First Street, P.O. Box 208
Troy, NY 12181

CITY OF TROY, CORPORATION COUNSEL                     IAN H. SILVERMAN, ESQ.
Attorneys for Defendants
1776 6th Avenue
Troy, NY 12180

DAVID N. HURD
United States District Judge

<u>MEMORANDUM–DECISION and ORDER</u>

## I. <u>INTRODUCTION</u>

This case arises out of plaintiff Michael Price's ("Price") purchase of a three-story building located at 275 Fourth Street (the "Fourth Street Property" or the "Property") in Troy, New York, which he purchased from fellow plaintiff David Slattery ("Slattery").

Price and Slattery, along with plaintiffs 24 Albany Holding, LLC ("Albany Holding") and Youth Empowerment Services of New York, Inc. ("YES"), two organizations controlled by Price (collectively "plaintiffs"), bring this action against defendant City of Troy (the "City") and a laundry list of City officials in their individual and official capacities:  Mayor Lou Rosamilia and Deputy Mayor William Chamberlain; Police Chief John Tedesco and Police Officers Isaac Bertos, Christopher Johnson, Bill Wade, and Randall French; and Code Enforcement Officers Bill French, Don Albano, and Matt McGrath (collectively "defendants").[1]

Plaintiffs' eight-count amended shotgun-style pleading alleges claims against "all or some of the above named defendants" pursuant to 42 U.S.C. § 1983 for denial of the right to use and access the Fourth Street Property (First Cause of Action), unlawful search and search seizure (Second Cause of Action), a violation of Equal Protection (Third Cause of Action), and abuse of the legal process (Sixth Cause of Action).  Plaintiffs also bring claims under the Fair Housing Act for violations of the "right to equal housing opportunity" (Fifth

---

[1] Plaintiffs also named John Doe City Code Enforcement Officers and City Police Officers.

Cause of Action) and unlawful interference with Slattery's sale of the Fourth Street Property to Price (Eighth Cause of Action).[2]

Defendants first moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 seeking partial dismissal of certain claims by Price and YES. Shortly thereafter, defendants amended this motion to seek dismissal of all of Price's claims. Defendants then moved separately for summary judgment on all of Slattery's claims.

Following briefing on those motions, defendants moved pursuant to Rule 41(b) seeking dismissal of the claims by Albany Holding and YES for failure to comply with certain orders issued by U.S. Magistrate Judge Christian F. Hummel. Price, proceeding pro se, filed an opposition to that motion. All three motions will be considered on the basis of the submissions and without oral argument.

## II. __BACKGROUND__[3]

In 1988, Slattery, a white male, purchased the Fourth Street Property, a "mixed use" building consisting of commercial space on the first floor and rental apartments on the second and third floors. Slattery Aff., ECF No. 155-10, ¶¶ 1, 5-6; Whipple Aff., ECF No. 155-9, ¶ 3.[4] Slattery initially operated a restaurant on the first floor of the building, but later

---

[2] Plaintiffs have consented to the dismissal of their state law claims for infliction of emotional distress and defamation (Fourth and Seventh Causes of Action) and those claims will be dismissed on that basis. See Pls.' Mem. Opp'n, ECF No. 155-11, 13 ("Plaintiffs concede that the State Law Claims should be dismissed . . . .").

[3] Defendants nominally complied with this District's relevant local rules by submitting a "statement of undisputed material facts" pursuant to Rule 7.1(a)(3) with each of their two summary judgment filings. See ECF Nos. 129-9, 136-9. However, both documents contain arguments and conclusions and are generally of little help in identifying the material facts relevant to the underlying dispute. For the sake of clarity, the following factual recitation is drawn from a review of all of the filings made by the parties in connection with defendants' various pending motions.

[4] Pagination corresponds to that assigned by CM/ECF.

leased this commercial space to James Skagg, another white male, who operated a bar and restaurant known as the "Paradise Pub."  Slattery Aff. ¶¶ 7-8.

On February 22, 2010, Slattery entered into a private real estate agreement to transfer the entire Fourth Street Property to Price.  Slattery Aff. ¶ 9.  Price, a black male, is the President, CEO, and sole shareholder of both Albany Holding and YES, the organizational plaintiffs named in this action.  See id. ¶¶ 9-10; Price Aff., ECF No. 155-2, ¶¶ 1-2; ECF No. 129-4, Ex. C, 8-10 ("Price Deposition").

Price planned to transfer his newly acquired interest in the Fourth Street Property to one of his organizations, Albany Holding, and use the first floor commercial space for the benefit of his other organization, YES, a not-for-profit whose stated mission is to develop programs and activities designed to keep kids in school.  Price Aff. ¶ 16.  Beyond that, Price also planned to rent out the second and third floor residential spaces.  See Whipple Aff. ¶ 3.

On August 18, 2010, Price applied for a building permit to make certain improvements to the Fourth Street Property.[5]  Price Aff., Ex. 1, ECF No. 155-3, 2.  Two days later, at approximately 3:00 a.m., a shooting occurred in the area around the Fourth Street Property.  Whipple Aff., Ex. D, ECF No. 155-9, 15.  According to Ms. Whipple, Price's former attorney:

> [T]he Troy Police Department believed the perpetrator [of the shooting] had run into the [Fourth Street Property].  At the time the property was closed to the public and Mr. Price was not on the premises but several acquaintances of his were.  The police kicked down the door to the establishment, arrested everyone and confiscated money and personal property from the establishment.

---

[5]  No action was apparently taken on this permit application; rather, it was simply returned to Price with a notation that it "cannot be heard by planning board per W. Chamberlain."  Price Aff., Ex. 1, ECF No. 155-3, 2.

Id. According to Price, City Police Officers seized "over $9,000" from the first floor belonging to Price and YES.[6]  Price Aff. ¶ 28.

Later that morning, City Police Officers obtained a warrant to search the first floor of the Fourth Street Property for evidence of drug-related offenses.  Price Aff., Ex. 4, ECF No. 155-6.  And although the timing is unclear, City Police Officers also summoned City Code Enforcement Officers to the building, who inspected it, found a number of code violations, declared the building unfit for human habitation, and required that the entire building be immediately vacated.  Price Aff., Ex. 3, 155-5 (attaching notice to vacate signed by defendant Code Enforcement Officer French).

On August 30, 2010, Price formally transferred his interest in the Fourth Street Property to Albany Holding and then hired Daniel Mitri, a licensed electrician, to perform electrical work on the building in an effort to remedy some of the assessed code violations.  Price Aff., Ex. 5, 155-7, ¶¶ 2,4 ("Mitri Aff.").  Although the City's Code Enforcement Office issued the requisite permit to perform the work, Mr. Mitri and his co-worker were arrested by City Police Officers for trespassing even after explaining they "had the property owner's permission to perform work."  Id. ¶¶ 5-6.  At the time of the arrest, Mr. Mitri claims these officers stated "what are you working for them for, we want them out of here."  Id. ¶ 7.  The charges against Mr. Mitri and his co-worker were subsequently dismissed.  Id. ¶ 8.

On March 10, 2011, Price visited the City's Code Enforcement Office to submit a

---

[6]  Price himself concedes he was not present for these events.  See Price Deposition at 13 ("I'm not sure because I wasn't there.").  A police report filed submitted in connection with a previous motion in this action indicates seven individuals were discovered inside the building and arrested for criminal trespass.  See Pl.'s Mem. Opp'n to Cross-Motion to Vacate, Ex. C, ECF No. 58-4, 10-11.

proposal to open a restaurant on the first floor of the Fourth Street Property, which had

become vacant at some point.  Price Aff., Ex. 2, ECF No. 155-4.  An e-mail chain generated

by some of the named Code Enforcement Officers and Police Chief Tedesco indicates that

"the PD is strongly opposed to any business operated by this individual based on his

history."  Id.[7]

Later that summer, City Code Enforcement Officers issued a number of "nuisance"

violations against the Fourth Street Property, including ones for "exterior housing," "litter,"

"weed/grass," and "abandoned/junk vehicle."  Whipple Aff. ¶ 4 & at 6-7 (detailing findings by

Code Enforcement authorities during inspection on August 16, 2011).

On October 26, 2011, Price pleaded guilty to these violations and was fined $25 for

each one.  Whipple Aff. ¶ 5.  Shortly thereafter, Price received notice that an administrative

hearing would be conducted on November 16, 2011 to determine if the Fourth Street

Property constituted a nuisance.  Id. ¶¶ 6-7.

Although a November 9, 2011 "violations corrected notice" indicates that all of the

Housing Code violations had been remedied, City officials nevertheless conducted the

scheduled nuisance hearing.  Whipple Aff., Ex. B, at 10; Whipple Aff. ¶ 7 & at 5-8.  The City

hearing officer concluded that the Fourth Street Property must be closed for thirty

days.  Id. ¶ 9.

On January 18, 2012, acting pursuant to his powers under the City's municipal code,

Mayor Rosamilia ordered the Fourth Street Property closed for an additional forty-five days

until March 3, 2012.  Whipple Aff., Ex. C, 12-13.  Although this would have required the

---

[7]  At that point, one aspect of Price's "history"—his criminal record—appears to have included state convictions for burglary and "criminal sale of a controlled substance."  Defs.' Reply Mem., Ex. G, ECF No. 159-2, 7-8.

tenants now living on the second and third floors to vacate the Property, Price's attorney negotiated a modification of this order that allowed the tenants to remain in the building.  Whipple Aff. ¶ 14 & Ex. E at 17.

Following this shutdown period, Price resumed renovation activity on the Fourth Street Property.  According to Whipple, City Police Officers soon began to "besiege[ ]" Price with "parking tickets and violations with respect to his vehicles" during this period.  Whipple Aff. ¶¶ 16-18.

On May 16, 2012, Price, proceeding pro se, filed this civil rights action.  In August of that year, a fire was set in Price's apartment on the second floor of the Fourth Street Property while he was not home.  Whipple Aff. ¶ 19 & Ex. H at 52-53.  Although Price informed the City Police Officers "who he believed had started the fire," he asserts "no follow up investigation was ever conducted."  Whipple Aff. ¶ 20.  Finally, in January of 2013, the City issued a certificate of occupancy to Price to use the first floor space as a Community Center operated by YES.  Price Aff., Ex. 6, ECF No. 155-8.

## III.  LEGAL STANDARD

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).  Such a fact is genuinely in dispute only "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Under this standard, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4. Once this initial burden is met, the opposing party must show, through affidavits or otherwise, that a material issue of fact remains for trial. Id. at 250.

Importantly, a court considering a motion for summary judgment "cannot try issues of fact; it can only determine whether there are issues to be tried." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36-37 (2d Cir. 1994) (citations omitted). In making this determination, a court resolves any ambiguities or inferences to be made from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48 (emphasis in original). However, summary judgment is appropriately denied where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted).

## IV. **DISCUSSION**

The parties to this now three-year-old civil action have permitted it to bloom into a full-grown procedural thicket, which must be cleared so that the merits of the underlying claims can be tested. To be sure, the record reflects that a number of intervening

events—including Price's incarceration at some point during the pendency of this litigation—interfered with the orderly progression of this case. But neither this fact, nor any other obstacle apparent from the record, sufficiently excuses the tangle of filings this case has recently become. A brief overview of the recent procedural history illustrates the problem.

On March 2, 2015, plaintiffs' attorney Vincent U. Uba, citing irreconcilable differences, moved before Judge Hummel, the U.S. Magistrate Judge to whom this case has been referred for purposes of pre-trial proceedings, for leave to withdraw as counsel of record for Price, Albany Holding, and YES. ECF No. 122. Two days later, and while Attorney Uba's request for leave to withdraw remained pending, defendants moved before Judge Hummel seeking to obtain certain outstanding discovery, including a series of interrogatory responses and a number of requests to which plaintiffs had allegedly failed to adequately respond. ECF No. 124.

On March 17, 2015, while both of these requests remained pending before Judge Hummel, defendants moved before this Court for partial summary judgment against Price and YES, seeking to dismiss all but the Second Cause of Action with respect to YES and an unclear subset of the causes of action with respect to Price. See Defs.' First Mem. Supp. Summ. J., ECF No. 129-8, 8 (moving against certain paragraphs of the operative pleading rather than identifying particular causes of action).[8]

But the filings did not end there. On March 31, 2015, defendants filed yet another

---

[8]  And just two days later, on March 19, 2015, defendants again moved before Judge Hummel seeking leave to file an Amended Answer to plaintiffs' now-operative pleading. ECF No. 130. However, defendants withdrew this request on March 31, 2015 in favor of pursuing a "dispository" motion against Slattery. ECF No. 137.

motion indicating that, "after further and continuing reflection upon the matter," they desired to amend their partial summary judgment motion "so as to seek total rather than partial summary judgment against plaintiff Price." Shanley Aff., ECF No. 135-1, ¶ 3. That same day, as if for good measure, defendants moved separately for summary judgment against Slattery. See Defs.' Second Mem. Supp. Summ. J., ECF No. 136-10, 7.

On June 3, 2015, Judge Hummel granted Attorney Uba's motion to withdraw, relieving him as counsel following completion of oral argument on defendants' pending summary judgment motions, which had not yet been fully briefed. ECF No. 150. Judge Hummel also warned plaintiffs that Albany Holding and YES would not be allowed to appear in this action pro se and gave Price until August 7, 2015 to obtain new counsel for these organizations. Id. A few weeks later, Judge Hummel granted defendants' motion seeking to compel a response to "all outstanding interrogatories and discovery requests" and ordered plaintiffs to comply by August 7, 2015. ECF No. 153.

On June 26, 2015, plaintiffs, who remained represented collectively by Attorney Vincent U. Uba, filed their consolidated opposition to defendants' summary judgment motions. ECF No. 155. Defendants replied on July 7, 2015. See ECF No. 159 (erroneously labeling reply as a "response in opposition").

On July 30, 2015, while defendants' summary judgment motions remained under consideration, Judge Hummel conducted a status conference to address the lingering issues of representation going forward. See ECF Nos. 160, 162 (requesting clarification of representation). At that time, Judge Hummel formally relieved Attorney Uba as counsel of record for Price, Albany Holding, and YES effective August 7, 2015. Judge Hummel also instructed Price that he was to appear at a status conference with new counsel, if any, on

August 12, 2015, and again cautioned him that neither Albany Holding nor YES could remain in this action without licensed counsel.  Attorney Uba remained as counsel of record for Slattery.

On August 12, 2015, the parties again appeared before Judge Hummel, this time to address still-outstanding discovery issues.  Judge Hummel granted Price a further extension—until August 21, 2015—to secure counsel for himself as well as the organizational plaintiffs.  Judge Hummel likewise revised the deadline for responding to defendants' remaining discovery demands to coincide with this date.

On August 20, 2015, Price, now pro se, submitted an affidavit of service attesting to his compliance with the outstanding discovery demands.  ECF No. 170.  However, the organizational plaintiffs remained unrepresented.  On this basis, defendants moved yet again—this time pursuant to Federal Rule of Civil Procedure 41(b)—seeking outright dismissal of any claims by Albany Holding or YES based on their ongoing failure to comply with Judge Hummel's orders directing them to secure counsel for this action.  ECF No. 171.  Price attempted to file an opposition on their behalf.  ECF No. 172.

The dust has now settled, leaving three of defendants' filings in need of resolution:  (1) a motion to dismiss Albany Holding and YES from this action; (2) a motion for summary judgment against Price and YES; and (3) a separate motion for summary judgment against Slattery.

### A. <u>Motion to Dismiss</u>

Most recently, defendants have moved to dismiss Albany Holding and YES from this action based on their respective failures to secure licensed counsel.

"If a party wishes to take advantage of the benefits of the corporate form, he or she

must also assume its concomitant burdens." <u>Omega Consulting v. Farrington Mfg. Co.</u>, 604 F. Supp. 2d 684, 685 (S.D.N.Y. 2009).  To that end, federal courts have consistently held that a corporation, however constituted, may not appear in a lawsuit except through an attorney.  <u>Grace v. Leumi Trust Co.</u>, 443 F.3d 180, 192 (2d Cir. 2006); <u>see also</u> <u>Sanchez v. Walentin</u>, 526 F. App'x 49, 51 (2d Cir. 2013) (summary order) ("[A] layperson may not represent a corporation in which he is the sole shareholder, a limited liability company of which he is the sole member, or a partnership where he is a partner.").  Consequently, this rule "has been applied to dismiss any action or motion filed by a corporation purporting to act pro se." <u>Id.</u> (noting that "where a corporation fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55").

The recent procedural history described above reveals that both Albany Holding and YES have been directed to obtain new counsel on several occasions.  Price has been warned that the consequences of failing to secure counsel for his corporate plaintiffs may lead to their dismissal from this action.  Further, Judge Hummel permitted Price at least one extension of time in which to address this deficiency.

Indeed, consideration of defendants' pending motions has been purposefully delayed out of a desire to give Price, in light of his pro se status, additional time to secure licensed counsel who could enter an appearance, even if untimely, on behalf of the corporate plaintiffs in this action.  Yet to date, neither Albany Holding nor YES have secured the requisite representation.  Accordingly, both entities will be dismissed. <u>See, e.g.</u>, <u>Jones v. Niagara Frontier Transp. Auth.</u>, 722 F.2d 20, 23 (2d Cir. 1983) (affirming order conditionally dismissing complaint for failure of plaintiff corporation to obtain counsel).

### B. __Motions for Summary Judgment__

Having cut through this first procedural tangle, other issues remain.  First, although the operative pleading here—an amended complaint filed in July 2014—was ostensibly drafted by plaintiffs' attorney prior to being relieved as counsel for Price, Albany Holding, and YES, it clearly violates Judge Hummel's June 2014 order directing plaintiffs to "redraft the complaint and clearly identify which defendants are named as to each cause of action and when the events relating to that claim occurred."  Price v. City of Troy New York, 2014 WL 2926479, at *6 (N.D.N.Y. June 26, 2014).[9]

However, although Attorney Uba duly filed an opposition to both of defendants' pending summary judgment motions on behalf of all the plaintiffs to this action, Price has once again been left to proceed pro se.  "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted).  Application of this liberal standard is especially important where, as here, a plaintiff alleges violations of his civil rights.  See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)).  Accordingly, given the odd procedural circumstances present here, the operative pleading will be construed with the heightened degree of solicitude ordinarily afforded to a plaintiff proceeding pro se.

Second, from what can be discerned from the moving papers submitted by

---

[9]  For example, although Judge Hummel ordered plaintiffs to "clearly refer to the parties with the proper identifies so as to not leave the Court or defendant(s) to guess as to which party was involved in each incident/allegation," each cause of action in the amended complaint still conclusorily states that "all or some of the above named defendants" caused the harms of which plaintiffs complain.  Price, 2014 WL 2926479, at *6.

- 14 -

defendants, neither summary judgment filing makes any attempt to address the merits (or lack thereof) of the various claims pressed by the remaining plaintiffs.  Rather, defendants assert that subject matter jurisdiction is lacking over Slattery's claims and that neither Price nor Slattery have standing to pursue the causes of action enumerated in the operative pleading.  See Defs.' First Mem. Supp. Summ. J., ECF No. 129-8, 8; Defs.' Second Mem. Supp. Summ. J., ECF No. 136-10, 8-9.

The Second Circuit has recently reiterated that a district court may not sua sponte grant summary judgment dismissing a claim on grounds not explicitly raised in a party's motion papers unless the parties are first given "notice and a reasonable time to respond."  Willey v. Kirkpatrick, –F.3d–, 2015 WL 5059377, at *8 (2d Cir. 2015) (quoting FED. R. CIV. P. 56(f)) (reversing grant of summary judgment by district court on grounds not raised in defendants' motion).  Accordingly, since that notice procedure was not undertaken here, consideration of defendants' motions will be limited to those grounds explicitly raised.

Finally, defendants point to a statement made by Slattery in his responses to interrogatories to claim that the Court is completely deprived of subject matter jurisdiction over any of Slattery's claims.  Defs.' Second Mem. Supp. Summ. J. at 10.  For example, defendants point out that, on February 26, 2015, Slattery responded to certain interrogatories by stating that "I was not claiming that my constitutional rights were violated.  Because of the actions of the Troy Police Department and Code Department, I was denied of income I needed."  Shanley Aff., Ex. C, ECF No. 136-4, 8.

Contrary to defendants' contention, a party's inconsistent statements cannot "conclusively establish or defeat subject matter jurisdiction."  Techno-TM, LLC v. Fireaway, Inc., 928 F. Supp. 2d 694, 699 (S.D.N.Y. 2013).  Rather, such a statement is only useful, as

is any other evidence submitted, "to help determine whether or not the facts establish" that the party under consideration has a valid claim to relief.  Id.  Accordingly, the issue of Slattery's standing to pursue the claims alleged in the operative pleading will be considered.

> **1.  First Cause of Action**

Price and Slattery's First Cause of Action, brought pursuant to 42 U.S.C. § 1983, alleges defendants denied them the "right to use and access" the Fourth Street Property without "due process of law."  Am. Compl. at 15.  In other words, it appears plaintiffs have attempted to state a procedural due process claim associated with defendants' decision to shut down the Fourth Street Property for code violations.[10]

Generally speaking, a plaintiff asserting a denial of procedural due process must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process."  Local 342, Long Island Pub Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted).

However, defendants do not challenge the merits of Price or Slattery's claim.  Rather, defendants argue that neither of the remaining plaintiffs have standing to assert it.  A plaintiff establishes standing by demonstrating "(1) a[n] . . . injury, (2) which is caused by the challenged activity, and (3) which will be redressed by the remedy sought."  Ford v. Reynolds, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) (citation and internal quotation marks omitted).  "As long as the injury is 'distinct and palpable' rather than abstract, conjectural, or

---

[10]  Price pleaded guilty and paid several $25 fines as a result of these violations.  Given this uncontested fact and the overall tenor of the operative pleading, plaintiffs are understood not to be pressing a substantive due process claim.  See, e.g., Leder v. Am. Traffic Sols., Inc., 81 F. Supp. 3d 211, 224-25 (E.D.N.Y. 2015) (rejecting substantive due process claim based on a $65 fine and collecting similar cases).

hypothetical, it is sufficient to confer standing." Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  Accordingly, "[s]tanding is not 'an ingenious academic exercise in the conceivable,' but . . . requires, at the summary judgment stage, a factual showing of perceptible harm." Lujan v. Defenders of Wildlife, 504 U.S. 555, 566 (1992) (internal citation omitted).

"As a general matter, [a] [p]laintiff is entitled to access his own Property." Garlasco v. Stuart, 602 F. Supp. 2d 396, 414 (D. Conn. 2009); see also Zitta v. Graham, 996 F. Supp. 2d 272, 280 (D. Vt. 2014) (finding, for purposes of summary judgment, that plaintiffs "sufficiently established a property interest" in ownership of a construction vehicle to trigger procedural due process protections).  But even assuming this entitlement to access or use one's property is sufficient under state law to confer a protected property interest, Price cannot identify any injury-in-fact sufficient to support a § 1983 procedural due process claim related to actions taken by the City and its officials in declaring the Fourth Street Property to be a nuisance and shutting it down for a period of time.

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Shakhnes v. Berlin, 689 F.3d 233, 250 (2d Cir. 2012) (quoting 42 U.S.C. § 1983).  "Violations of *rights* thus give rise to § 1983 actions; mere violations of *laws* do not." Id. (emphases in original).  "Notice and an opportunity to be heard are the hallmarks of due process." Ferreira v. Town of East Hampton, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014); see also Rivera-Corraliza v. Morales, 794 F.3d 208, 223 (1st Cir. 2015) ("Normally due process requires notice and a hearing of some sort before the government takes away property—the state, in other words, usually must say what it intends to do and then give

- 17 -

affected persons the chance to speak out against it."  (citations omitted)).

Here, Price received notice and a hearing before the Fourth Street Property was shut down.  In fact, Price, represented by counsel, appeared and participated in that hearing.  And although Price's attorney in that proceeding has suggested in her affidavit that a nuisance finding was unusual in this context, there is no indication in the factual record that the notice of the violations, or the hearing procedure employed to resolve them, was deficient in the constitutional sense.

In other words, Price's § 1983 procedural due process claim attempts to challenge the consequences of the unfavorable decision—the shutdown of the Fourth Street Property—rather than the deprivation of a constitutional right; that is, his right to the procedural protections guaranteed by due process.  Because plaintiff has not provided a factual showing of perceptible harm flowing from the procedures employed by the City and its officials, he lacks standing to pursue this claim.  Compare Brody v. Village of Port Chester, 261 F.3d 288, 290 (2d Cir. 2001) ("Brody I") (finding plaintiff could not demonstrate injury-in-fact where he received notice of hearing, appeared, and "presented his views") with Brody v. Village of Port Chester, 345 F.3d 103, 112 (2d Cir. 2003) ("Brody II") (concluding plaintiff suffered injury-in-fact from "being denied notice" of later condemnation proceedings against his property).  Any claim by Slattery fails for the same reasons.[11]  Accordingly, the First Cause of Action will be dismissed.

## 2.  Second Cause of Action

Price and Slattery next claim defendants violated the Fourth Amendment by

---

[11] Slattery's interest as mortgagee suffices to trigger the protections of procedural due process.  First Nat'l Acceptance Co. v. City of Utica, N.Y., 26 F. Supp. 3d 185, 196 (N.D.N.Y. 2014) (McAvoy, S.J.).

"searching and seizing property" belonging to them "without warrant, and without legal justification."

As an initial matter, Slattery cannot assert any § 1983 claim related to a search, lawful or otherwise, of the Fourth Street Property. The Fourth Amendment is only applicable if a plaintiff "'(1) can demonstrate that he personally has an expectation of privacy in the place searched,' and (2) 'that his expectation of privacy is reasonable; i.e., one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 218 F. Supp. 2d 266, 269 (N.D.N.Y. 2002) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

To be sure, "[o]ne need not be the owner of the property for his privacy interest to be one that the Fourth Amendment Protects, so long as he has the right to exclude others from dealing with the property." United States v. Perea, 986 F.2d 633, 639-40 (2d Cir. 1993). However, the only interest Slattery claims in the Fourth Street Property following his sale to Price is one of mortgagee; that is, his only continuing involvement with the Property is his expectation of continuing mortgage payments from Price and his corporate entities. See Slattery Aff. ¶¶ 9, 11.

These assertions are insufficient to demonstrate a reasonable expectation of privacy in the place that was searched. Cf. Mangino v. Inc. Village of Patchogue, 739 F. Supp. 2d 215, 234 (E.D.N.Y. 2010) ("A landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant."); United States v. Hamilton, 538 F.3d 162, 168 (2d Cir. 2008) (crediting factual assertions that individual had "free and frequent access" as well as "effective control" over a

premises to find a privacy interest entitled to Fourth Amendment protection).  Accordingly, Slattery's Second Cause of Action will be dismissed.

Price's basis for asserting this cause of action fares slightly better in spite of the fact that his own deposition testimony indicates he was not actually present for the early morning police entry.  See Price Deposition at 13 ("I'm not sure because I wasn't there.").

"A protected privacy interest has been found in a wide array of circumstances, ranging from ownership or regular occupancy of a home, to status as an overnight guest in someone else's home, or even in someone else's hotel room, to a rental storage unit, to one's business premises, including the desk drawers and file cabinets contained therein, as well as the contents of one's office computer."  Nieves v. N.Y.C. Police Dep't, 716 F. Supp. 2d 299, 307 (S.D.N.Y. 2010) (citation omitted) (emphasis added) (reinstating illegal entry and search claim for trial).

Here, the basis for Price's Second Cause of Action is the entry and search of the Fourth Street Property by City Police and Code Enforcement Officers on August 20, 2010.  Specifically, Price claims in his affidavit that City officials entered the Property and seized cash from the first floor commercial space, which he had closed to the public at the time.  At the very least, these claims create sufficient issues of fact to confer standing to challenge the warrantless search of the Property's first-floor commercial space.[12]  See Anobile v. Pelligrino, 303 F.3d 107, 117 (2d Cir. 2001) ("The Fourth Amendment protects against unreasonable searches of commercial premises."); see also Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 842 (10th Cir. 2005) ("Individuals have a reasonable expectation of

---

[12]  The evidence in the record suggests that, at the time of this entry and search, Price had rented out the second- and third-floor residential space to other tenants.  If Price were a mere landlord to those tenants, he would lack a Fourth Amendment privacy interest to challenge the entry and search of those floors.

privacy in commercial property."). Assuming City Officials did impermissibly enter the premises and proceed to effect an unlawful seizure of a sum of money belonging to Price, those injuries could arguably be redressed by a favorable outcome at trial.[13]

Of course, this is not an inquiry into the merits of that claim. For example, assuming the City Police Officers initially entered the building based on an "urgent need" to pursue an armed, fleeing suspect, exigent circumstances would likely excuse such a warrantless entry. Callahan v. City of New York, 2015 WL 1119728, at *6 (E.D.N.Y. Mar. 13, 2015) ("The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action.").

Further, this same justification might support the City Police Officers' decision to summon City Code Enforcement Officers to inspect the building. See Capozzi v. City of Olean, 910 F. Supp. 900, 908 (W.D.N.Y. 1995) (concluding police officer who entered house under exigent circumstances was permitted to summon code enforcement officer to inspect building for safety); see also Gudenas v. Cervenik, 2011 WL 4436660, at *15 (N.D. Ohio Mar. 22, 2011) (concluding same where officers "observed possibly dangerous housing violations in plain view" upon their entry into a premises).

Likewise, although Price claims over $9,000 in cash was seized from the first floor, the factual circumstances surrounding this alleged seizure are more or less a mystery. To be sure, there are certainly conceivable scenarios in which such a seizure might have been

---

[13] And even in the absence of some colorable compensatory injury, it would still be possible for a jury to award Price nominal or punitive damages stemming from a bare constitutional violation. Nieves, 716 F. Supp. 2d at 306-07 & n. 60.

permissible.[14]  For instance, officials could have observed illegal activity in plain view and, reasonably believing the cash was both related to such activity and in danger of being destroyed or removed before a search warrant could be obtained, effected a temporary freeze of the premises.  Cucuta v. New York City, 25 F. Supp. 3d 400, 410-11 (S.D.N.Y. 2014) ("A temporary seizure supported by probable cause and exigent circumstances, namely preventing the destruction of evidence, while the police diligently obtain a search warrant can be reasonable under the Fourth Amendment."); see also Arizona v. Hicks, 480 U.S. 321, 326 (1987) (noting that police may conduct warrantless seizure of evidence in plain view so long as the "initial intrusion that brings police within plain view of such evidence is supported . . . by one of the recognized exceptions to the warrant requirement, such as [ ] exigent circumstances").

But the resolution of those issues go to the merits of Price's Fourth Amendment claim, not his standing to assert it.  Therefore, Price's Second Cause of Action remains for trial.

### 3.  Third Cause of Action

Price and Slattery next claim defendants violated their right to equal protection of the law by repeatedly harassing Price with code violations and parking tickets "because of [his] race/ethnicity."

"The Equal Protection Clause requires the government to treat all similarly situated people alike." Hafez v. City of Schenectady, 894 F. Supp. 2d 207, 224 (N.D.N.Y. 2012) (D'Agostino, J.).  "A plaintiff may proceed under the Equal Protection Clause as either a 'class of one,' or under the theory of 'selective enforcement.'" Id. (internal citations and

---

[14]  Indeed, it is unclear whether City officials seized any cash at all (and, if so, whether the cash was seized during the initial entry or during the later search pursuant to a warrant).

citations omitted).

In this case, Price claims that City Officials selectively/unfairly enforced various ordinances against him in an attempt to drive him out of the neighborhood.[15]  Whatever the merits of this claim, Price certainly has standing to assert it.  See Doe v. Village of Mamaroneck, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006) (concluding individual day laborers possessed standing to pursue equal protection claim based on assertion that "defendants have engaged in a campaign designed to drive out the[m out of the village]").  Accordingly, Price's Third Cause of Action also remains for trial.

### 4. Sixth Cause of Action

Price and Slattery next claim defendants have abused the legal process by issuing spurious tickets, violations, and summons[es] against plaintiffs "for the purpose of frustrating and steering [them] . . . out of the neighborhood."

"An abuse-of-process claim can give rise to liability under § 1983."  Hogan v. Cnty. of Lewis, 2015 WL 1400496, at *17 (N.D.N.Y. Mar. 26, 2015).  "In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Id. (citations omitted).  "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution."  Id. (citation omitted).

As noted above, Price claims City Police Officers began aggressively issuing

---

[15]  Slattery does not make any claim that any enforcement against was taken against him and therefore he cannot assert any claim related to these allegedly improper summonses.

summonses against him after he resumed renovation activity on the Fourth Street Property.  See Whipple Aff. ¶¶ 16-18.  Importantly, however, "[i]t is undisputed that an abuse of process claim may only be based on events *subsequent to* initiation" of the legal process at issue."  Miles v. City of Hartford, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (emphasis in original).  Here, Price has not articulated any impermissible conduct occurring as a result of the issuance of these unfair summonses, nor has he identified how any such conduct can be fairly traced to any of the defendants named in this action.  Accordingly, Price's Sixth Cause of Action will be dismissed.[16]

### 5.  Fair Housing Act (Fifth and Eighth Cause of Action)

Finally, Price claims defendants violated his right to "equal housing opportunity" under the Fair Housing Act (the "FHA") "by deliberately engaging in conduct[ ] calculated to frustrate plaintiff[ ]" and "thereby force [him] to surrender, abandon, sell[,] or give up the [P]roperty."  In a similar vein, Slattery claims defendants unlawfully interfered with his right to "freely sell or transfer his interest" in the Property to Price.

As an initial matter, "a plaintiff cannot assert claims under Section 1983 for the deprivation of rights guaranteed by the FHA."  Sinisgallo v. Town of Islip Housing Auth., 865 F. Supp. 2d 307, 333 (E.D.N.Y. 2012).  Therefore, to the extent plaintiffs' FHA claims are construed as § 1983 claims based on the protections of the FHA, they must fail.

Any free-standing claim brought under the enforcement provisions of the FHA fares no better.  "The FHA confers standing to challenge [ ] discriminatory practices on . . . any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes

---

[16]  Again, Slattery makes no claim of any actions taken against him in this regard.

that such person will be injured by a discriminatory housing practice that is about to occur." Bloomingberg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y., –F. Supp. 3d–, 2015 WL 3604300, at *22 (S.D.N.Y. June 9, 2015) (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995)). "Under this lenient standard, courts have granted standing to, among others, developers asserting challenges under the FHA against municipal decisions that present a barrier to developments." Id. (citations omitted).

But neither Price nor Slattery have standing to assert a claim under any of the four FHA provisions they have identified. First, § 3604, which prohibits discrimination in the sale or rental of housing, requires a plaintiff to establish a prima facie case by showing, inter alia, that he sought, was qualified for, and was rejected from, a housing opportunity. Mancuso v. Douglas Elliman LLC, 808 F. Supp. 2d 606, 617 (S.D.N.Y. 2011). That is simply not the case here.

Second, § 3605, which prohibits discrimination in residential real estate-related transactions, defines "transactions" as "(1) [t]he making or purchasing of loans or providing other financial assistance . . . . [and] (2) [t]he selling, brokering, or appraising of residential real property." Jordan v. Chase Manhattan Bank, 2015 WL 1000058, at *8 (S.D.N.Y. Mar. 6, 2015). Again, there is no indication in the pleadings or the record to plausibly suggest that any of the defendants interfered with Slattery's actual sale to Price in either manner.

Third, § 3606, which prohibits discrimination in the provision of brokerage services, appears completely inapplicable to the facts of this case. Pandozy v. Segan, 340 F. App'x 723, 725 (2d Cir. 2009) (summary order) (concluding FHA claim properly dismissed where there was no allegation of any "brokerage services" being provided).

Fourth, § 3617 prohibits interference, coercion, or intimidation of any person with

respect to the above-referenced provisions.  Haber v. ASN 50th st., LLC, 847 F. Supp. 2d

578, 585 (S.D.N.Y. 2012).  "To establish an FHA claim under § 3617 . . ., plaintiffs must

demonstrate (1) that they aided or encourage members of a protected class in the exercise

or enjoyment of their FHA rights, and (2) that as a result of their actions, they suffered

coercion, intimidation, threats, interference or retaliation."  Wentworth v. Hedson, 493 F.

Supp. 2d 559, 565 (E.D.N.Y. 2007).

        This provision is clearly inapplicable to either of the remaining plaintiffs.  And even

assuming defendants actions here resulted in a loss of income to Price and therefore

prevented him from making mortgage payments to Slattery, this is not the kind of aid or

encouragement required to establish a cognizable claim under this provision.  Plaintiffs do

not plead or otherwise offer any evidence of any attempt to exercise the FHA rights

enumerated above (or interference with them) and therefore any § 3617 claim based on

Slattery's inability to collect on the mortgage note cannot be litigation in this action.  See

Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 265 (E.D.N.Y. 2009).

        Finally, although the FHA's protections also apply to "municipal zoning decisions,"

there is no indication defendants made any changes or alterations to any zoning ordinances

that acted to adversely affect or impact Price.  Tsombanidis v. West Haven Fire Dep't, 352

F.3d 565, 574 (2d Cir. 2003).  Rather, Price claims injury from defendants' ongoing

implementation of existing codes.  Accordingly, plaintiffs' Fifth and Eighth Causes of Action

will be dismissed.

### 6.  Final Matters

### i.  Injunctive Relief

        First, defendants seek to dismiss plaintiffs' claim for injunctive relief.  "Past injury alone

does not establish a present case or controversy for injunctive relief." MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 594 (S.D.N.Y. 2011). In this case, plaintiffs only identify a series of past harms by the City and its officials without any apparent claim of ongoing injury.

In fact, the record reflects that in January of 2013, the City issued a certificate of occupancy to Price to use the first floor space as a Community Center operated by YES. See Price Aff., Ex. 6, ECF No. 155-8. Given the total absence of any indication of ongoing or future harm, plaintiffs' claim for injunctive relief will be dismissed. Gustafson v. Village of Fairport, –F. Supp. 3d–, 2015 WL 3439241, at *5 (W.D.N.Y. May 29, 2015) ("District courts in the Second Circuit have not hesitated to find standing lacking where a plaintiff cannot show that he or she is likely to be subject to a future injury.").

### ii. "Official" v. "Individual" Capacities

Second, the remaining plaintiffs have named the various defendants in both their individual and official capacities. But "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." Coon v. Town of Springfield, 404 F.3d 683, 687 (2d Cir. 2005) (citation omitted). In other words, plaintiffs' claims against the individual defendants in their official capacities are merely duplicative of their claims against the City. Accordingly, the official-capacity claims against the individual defendants will be dismissed.

### iii. Monell Liability

Third, with respect to claims against the City itself, plaintiffs are reminded that municipalities are not subject to § 1983 liability merely on the basis of a *respondeat superior* theory—in other words, the City cannot be held liable under § 1983 simply because it is the

employer of the individuals who committed the allegedly harmful acts.  Rather, a plaintiff must identify a municipal policy, custom, or practice from which the alleged injury arose.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-85 (1978).

Generally speaking, actions "taken by persons whose activities reflect official policy . . . may constitute a custom or policy for § 1983 purposes."  Doe, 462 F. Supp. 2d at 559.  For example, "[m]ayors may be treated as policy-makers without proof of their specific powers and responsibilities."  Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 n.4 (2d Cir. 1983).  "Lesser officials, however, cannot similarly be presumed to embody plenary municipal power."  Id.

Here, there is evidence in the record indicating that Mayor Rosamilia issued an order extending the period of time during which the Fourth Street Property would remain closed following the nuisance hearing.  See Whipple Aff., Ex. C, 12-13.  Likewise, Deputy Mayor Chamberlain directed certain Code Enforcement officials to return Price's August 18, 2010 permit application to him because it "c[ould not] be heard by [the City's] Planning Board" at that time.  Chamberlain Aff., ECF No. 40-4, ¶¶ 6-7; Price Aff., Ex. 1, ECF No. 155-3, 2.  However, those acts would seem to bear on plaintiffs' procedural due process claim, which is being dismissed.  Accordingly, the Mayor and Deputy Mayor will also be dismissed.

### iv.  John Doe Defendants

Finally, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant."  Coward v. Town & Village of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).  Accordingly, the John Doe defendants will be

dismissed. <u>Watkins v. Doe</u>, 2006 WL 648022, at *3 (S.D.N.Y. Mar. 14, 2006) (dismissing without prejudice claims against "John Doe" defendants where "despite having the full opportunity to conduct discovery, plaintiff has not yet identified and served [those] defendants . . . within 120 days of filing the complaint . . . [and] has not sought an extension of the time allowed").

## IV.  <u>CONCLUSION</u>

Albany Holding and YES cannot proceed in this action pro se and must be dismissed. Likewise, Slattery has not provided any evidence of any ongoing involvement in the events giving rise to this action beyond his sale of the Fourth Street Property to Price and therefore he lacks standing to pursue any claims enumerated in the operative pleading.

However, drawing all reasonable inferences in favor of Price, the non-movant here, there are sufficient issues of fact regarding his standing to maintain the Second and Third Causes of Action to defeat a summary judgment challenge.  It is noted that the September 12, 2014 motion filing deadline in this case has long passed.  ECF No. 91.  Accordingly, the remaining claims are suitable for trial.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss (ECF No. 171) Albany Holding and YES is GRANTED;

2.  Defendants' motion for summary judgment (ECF No. 136) on Slattery's claims is GRANTED;

3.  Defendants' motions for summary judgment on Price's claims is GRANTED in part and DENIED in part;

4.  Albany Holding and YES's claims are DISMISSED;

5.  Slattery's claims are DISMISSED;

6.  Albany Holding, YES, and Slattery are DISMISSED as plaintiffs from this action;

7.  Mayor Lou Rosamilia, Deputy Mayor William Chamberlain, and the John Doe defendants are DISMISSED as defendants from this action;

8.  Plaintiffs' official-capacity claims against the remaining defendants are DISMISSED;

9.  Price's First, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action are DISMISSED; and

10.  Price's Second and Third Causes of Action remain for trial.

A trial scheduling order will issue shortly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  November 2, 2015
        Utica, New York.